319-0746-WC City of Peoria Appellant v. The Workers' Compensation Commission Tangela Taylor-Appley. He's coming up just as hands and a face. We don't see the rest of him. Well I kind of see in the background. I got white hair now. I don't know if that's having any effect on me. When I was younger I probably could be seen very well. I've got a background. I've tried many different ways. I can get rid of that background. This is the best I can do in my circumstances. I apologize. Well I can see your face and hands and your tie and your shirt and I think that's sufficient. What do you think, fellas? We can see his face and hear him so I think that would be sufficient. And we can hear you. Can you hold the camera closer to yourself? I have the suit on too. There you go. It's like the background is in front of you. Okay. That's what we're seeing. We had the same issue, Ron, yesterday on a trial. And we went out and got one of those green screens to use which really made a dramatic difference. Really? We were having the same problem with the bleeding through. I actually went to Hobby Lobby yesterday for the first time in my life and I have green construction paper taped behind me. And I don't know if it's because of the lighting in the room. I apologize. Well, you're much better now. Yeah. So listen, I think this worked. Yeah, you're much better now. Okay. It was by the strength of your internet. Is that it as well? If you don't have a real good router and connection, it can cause that. I am on the opposite end of my office. We try to put a router up on the upstairs. I have an old building, two of them together. And I'm way in the corner away from my server. That could be it, Your Honor. You can buy a device that you can put in your office. It kicks up the impulse from your router. Some people do it in multiple locations in an office. I think each device costs about $200. But it does kick up the symbol and eliminates this. That would be money well spent. I will do it. Thank you. Okay. Well, thank you. We'll proceed. Mr. Snodgrass, are you prepared, ready to proceed? I am, Your Honor. Thank you. Okay. Please go ahead. Good morning, all. May it please the Court. Mr. Kelly, my name is Ken Snodgrass. I'm here today representing the City of Peoria in this Tangela Taylor matter. As a background, Tangela Taylor was a Peoria police officer. She was 43 years of age at the time of her injury on December 6, 2015. As the case demonstrates, we have no dispute regarding an accident or false connection. The issue in this case is the nature and extent of the award and whether the arbitrator and the commission erred in not considering line-of-duty disability benefits afforded to her under the pension code as well as PSEBA benefits afforded to her for a lifetime as a result of the line-of-duty disability she received. In this regard, Your Honors, I would point out that we are looking at this matter, that those factors, that this falls within the purview of our future earning capacity analysis as set forth in 8.1b.4 of the factor analysis in the workers' compensation statute, and that they should have been, that this information should have been considered in light of the award of 40% man as a whole, which represents $151,044. And we believe that's not supported or warranted by the record. Additionally, I would point out that under the Flex Steel case, as this Court is well aware, this Court can also evaluate other relevant circumstances in making decisions as to a permanency award or on a workers' compensation matter. A brief history of what a line-of-duty disability pension and PSEBA and the PSEBA evidence in the record. First of all, the arbitrator and the commission, by its summary of affirmance, found that her pension benefits are not earnings that do not impact her future earning capacity. That was that arbitrator's decision Can you hear me? Yes. Something popped up on my screen. I'm sorry. Can you see me? Yes. Uh-huh. Can you see what this is real quick? Can we X that out, or is that going to kick us off? I'm sorry, Your Honor. Something popped up. There. It's gone now. Thank you. Sorry for the inconvenience. Yes. Go ahead. In regards to the line-of-duty and PSEBA evidence in the record, I've pointed out what the arbitrator found. We believe that, in this case, the standard of review is set forth in the Brzeska case and the Sylvester case should make this a de novo standard of review. If you review the Brzeska case, they were confronted with the definition of commerce under the Workers' Compensation Act. Sylvester involved an average weekly wage case analysis under Section 10 and they both reviewed that under a de novo standard. As an alternative, you have the Dodaro case, which is also cited in the brief, which is a de novo review when the facts essential to the court's analysis are undisputed and the court's review only involves application of law to undisputed facts. In any event, we believe that it's a de novo review under either case analysis. Let's talk about the analysis of those benefits in regards to the AP1 factors. Counsel, can I just interject a question? As I understand it, one of the key points that you are emphasizing that you believe the Commission completely erred on was the determination or finding that the claimant's pension benefits are not earnings. Is that correct? That's correct. Do you have any case law that you can call to our attention specifically that says they are? No, Your Honor. There is no case law, but what we have cited instead is the Village of Streamwood case and the TPAC decision in our brief which involved analysis of 8J credits in regards to whether disability benefits should be considered or not in those cases. If you look at the Village of Streamwood case, there was no showing that the Police Pension Fund benefits were limited to occupationally related disability. In this case, that's not the case. Clearly, they were related to the accident that occurred on the date that formulates the basis for the work comp matter. I would also point out in TPAC, there was an issue on a group plan whether full benefits paid, salary paid was to the claimant. The court considered that issue, but found that it was not tied to any sort of, that the benefits were payable whether or not the claimant was injured at work or not. So we think those cases serve as an analogy or a basis to consider here, these benefits. I would submit to you it's a case of first impression in terms of that. I don't think anyone here can cite a case that would raise this issue or where this issue has been raised previously, Your Honor. Have you read the Jackson Park Hospital case? If I have, I'm not certain, Judge. You're not prepared to address its holding? No, I'm not, Your Honor. Do you contend that the receipt of a duty disability pension has something to do with the amount that an injured employee is able to earn in some suitable employment? What I contend is that when you look at future earning capacity under the statute and when you consider that the line of duty is 65% tax-free based on the same accident with the understanding that that line of duty disability pension is not offset by future employment and those benefits are tax-free, that that should be considered in the analysis of permanency in this case. The police officer is in a unique just like a firefighter is in a unique situation regarding these type of benefits. This is not like a loss of occupation for someone else in a different setting. They're not afforded these benefits. Wait a minute, but why isn't there a loss of occupation? In order to get the benefits, there has to be a finding that the individual is no longer capable of performing as a police officer. They've got to have, what, two doctors have to say it in order to get the pension? Three doctors had to say it in this case. All three doctors reports were previous to the petitioner's removal of the hardware from her ankle, which made a dramatic difference in terms of her condition. If you look at the notes from Dr. Kinzinger I could understand your argument if your argument was that at some point in time she was now capable to perform as a police officer and therefore she's not entitled to the award that you receive. But I don't understand how the receipt of duty disability pension has anything to do with future earning capacity in that suitable, in some suitable employment. The question is, can she work? And to what level can she work? And has it been diminished? It occurs to me that why should you be entitled to some form of a credit for a duty disability pension? I mean, I don't understand that. I don't think we're asking for credit. We're asking that it be considered as in the analysis of the future earning capacity. Well then, in order to consider it as part of the analysis, you would have to consider it to be earnings. Well, or if you look at the Flex Steel case, you would have to consider it as another relevant circumstance to consider in regards to a permanency award. So what are you saying? That you want us to carve out an exception for in this case, governmental employees such as firefighters and policemen who qualify for this unique benefit of in-line duty disability pension. Is that what you're saying? Yes, I'm saying that the line of duty disability pension awarded them should be considered in regards to the permanency award that was rendered in this case. And if you look at what the commission decided, based on the arbitrator's decision, they were not considered. There was an objection made at arbitration at the relevancy, which was overruled. But then the arbitrator went on to state that he was not considering them as part of future earning capacity. And if you take that argument further, isn't it a relevant circumstance that should be considered in regards to this lady's impact on this lady in terms of her future earning capacity when you have tax-free benefits of 65% with no offset for future employment? Let's talk about those tax-free benefits for a moment. They're really not tax-free benefits. She's not getting 100%. She's getting 60-some percent, which basically is trying to reflect what an after-tax I can spend is. So it has nothing to... So it's after-tax benefits, but it's somehow... I don't know. To me, I guess it's the phraseology we use there. I mean, she's getting in effect what she would have if she continued to work at that level. Is that correct? Right. She's getting a tax-free benefit. Maybe that's the way to say it. She's getting, as long as her disability exists, the same amount of money she would have gotten if she continued to work as a police officer, correct? That's an argument. Yes, Ron. I would agree. How does her receipt of this money... I'm sorry? How does her receipt of her pension in any way affect her earning capacity? It's earning capacity that Permanent and Partial focuses on, not the amount of money she receives. She talks in terms of earning capacity in some suitable employment. Can she work, and at what level can she work? Well, let's assume for purposes that she... At time of arbitration, she indicated that she was working selling Mary Kay cosmetics for $100 a month. That was what was stated in the record. Well, that's her earning capacity. That doesn't necessarily fix her earning capacity, but it's certainly evidence of it. Evidence, but the fact that she's receiving a duty disability pension, how does that affect her earning capacity? I think what it is an indication of is, as I stated previously, was that it's a factor that should be considered because of the uniqueness of her employment here in regards to Permanency Award. If you look at the total benefit she'll receive by age 60, we're talking about over $900,000 in tax-free benefits. If we look by the time she reaches age 70, we're talking about $2 million worth of tax-free benefits. And then we also have to look at the fact that if she were to go out and get a job, let's use Justice Holdridge's example, and made the difference between what she was earning from a police officer at the time she got the award and what she's getting by the way of the line of duty disability pension, she's actually arguably money ahead. What if she makes the same amount of money and she receives a line of duty disability? There's no credit for any employment she gets. Her future earning capacity, you could argue in this case, is magnified because of what she's getting tax-free in light of the fact of what she could do work-wise. And whether she has decided to go out and get other employment or not, at the time of arbitration, it was Mary Kay Cosmetics. And if you look at the medical, Your Honor, in terms of this lady's disability, if you look at the notes from her treating orthopedic surgeon, as of the last visit in November, she came in, she indicated at that point in time that she was on November 2, 2017. Her ankle felt tremendous since the hardware removal. She was weight-bearing as tolerated. It's an entirely different argument than some credit for her duty disability pension. The statute speaks in terms of what you are able to earn in some suitable employment. The disability pension is not employment. You're suggesting a credit. I mean, there's all sorts of, I mean, would you be suggesting that if someone became a permanent total as a result of a duty injury and they were a police officer or a fireman, that you should get some kind of a credit for their disability pensions? Well, what I would say to that, Your Honor, is that if you look at the credit provision of the Illinois Pension Code, which is cited in her brief to the fireman's pension code, but if you look at the 53114.5, which is the correct site for police pension matters, if she were to get a wage differential, in this case, under the pension code set up, there'd be a credit. There'd be a credit against what she was receiving on the line of duty disability pension. If she were to receive a permanent total under that statute, there'd be a credit. So think of it this way. She's getting a man as a whole award, awarding over $150,000 based on a 40% man as a whole. The reason that that's beneficial to her in the long run is she avoids these credits. And if she would've gone in and said, I want a wage differential on my Mary Kay $100, then in essence, Your Honor, we're talking about a situation where she's not money ahead. And that's, I think, the line of duty, the setup provision is trying to provide for that type of situation. And I think what we're arguing is... I mean, that's for them to do. If they want to set up a credit for a man as a whole's award, they should do it, but they haven't done it. Our time is up. And you'll have time in reply, Mr. Snodgrass. Thank you. I appreciate that. Can I say that? Oh, sure. Yes. Okay. Fine. Mr. Kelly, you may respond. May it please the court opposing counsel, I'm going to be brief in my argument. I think you have hit on the important points in this case in that my client's line of duty benefits on the pension code are not future earnings as it relates to the workers' compensation case. I think it's important to look at the decision of the arbitrator and the commissioner for individuals who looked at this case. And in the decision and language of the decision, they talk about the importance of my client's loss of occupation. The arbitrator and the commission talked about my client not be able to pursue the availability options as a police officer, not able to do police officer work, not able to proceed through and obtain benefits or at least earn income through a police job. This is a case. We have an officer who is clearly unable to go back to work as a police officer. The evidence establishes that. The commission did the analysis and awarded under 8D2 man as a whole. I think that's proper. I don't think counsel's here saying this is not an 8D2 case. The evidence all points to loss of occupation. The second analysis that the commission did was to look at the pension benefits. The pension benefits are under 8.1B1 through 5.4. It seems like the city is trying to indicate or argue that these pension benefits some way are earned income. The questions you pose to counsel, I think well established in the world that it's not income to her. She's not getting full salary. This is a 65% pay. She's not 100% pay. Because of her injury, certainly she's not able to do things in the police work and do things that she would be able to absent the injury. I have a question here. It's a disability line of duty pension disability benefit. Am I correct? Yes. Okay. And is a benefit the same as wages? No. The benefit is based off wages, but it's not the same as wages. So wages is just a metric to calculate a benefit, but it's not considered or categorized as a wage. That's correct. It's not taxable. So even on the Internal Revenue Code, it's not a disability benefit. Believe me, my client's 43, 44 years old. She was a police officer for the Peoria Police Department. She'd rather be working as a police officer right now. Does it really make any difference? You keep talking about her ability to work as a police officer, but the statute speaks in terms of capacity to earn in some suitable employment. Now suitable employment, I don't think is a synonym for the employment that you had before you were injured. Suitable employment speaks in terms of your capacity to work somehow. And it occurs to me that the award has to be made based upon the commission's determination  after the injury. Not necessarily. We know she can't work as a police officer. At least the pension board seems to think she can't because they awarded her the duty disability pension. But what is her ability to work in any capacity? I think that goes to the analysis where it's a manifest weight evidence issue as far as the commission making that determination   I think that goes to the analysis that they provided here. They looked at the restrictions placed upon her and at the time of trial, the evidence showed that her employment at the time of trial was that of selling cosmetics. It may have been different if she had a different job at the time of hearing, but that's not the evidence presented to us. I think that also goes to what the commission talked about in their decision about these benefits she's getting out of the pension code. They can be taken away tomorrow. That's not within her control. She is submitted to an exam once a year by the pension board to evaluate her work ability. So these pension benefits are not guaranteed. So to answer your question, Your Honor, at the time of trial, when the evidence was presented, she's working as selling cosmetics within the restrictions were placed upon her. There was no evidence provided by the city at the time of trial that there was her ability to earn more or her ability to go out and have higher earnings. That wasn't presented at the time of trial. Well, that was the point of my question. There would have to be evidence that she is capable of working in some capacity that would earn at a certain level and then the benefit is calculated. In fact, she can't work as a police officer. It has to do with her disability, but I don't think it has anything to do with her capacity to work in some suitable employment. I agree. It's definitely evidence establishes that she's not able to do that occupation under 8D2. D is dog under the statute. And then when you fall into, you're right, into the 8B.1 portion of the statute, then you look at the evidence as the five factors lay out. You look at her age. You look at her occupation. You look at the records and disability. And that's what the commission did here. And that's why our argument or my argument in this case is this is a manifest weight issue. They did the analysis and they looked at the evidence and this is what they found in this case. Certainly, this may be a different case if we're in front of you and there's three vocational experts who testified she could go out and earn more money because that's earned income. But certainly not in this case. The evidence doesn't present that and I think that it's improper to come forward and say somehow the city gets a credit or somehow the decision should be reduced because she's simply on line of duty of disability benefits. Based off that, I would ask that this panel and this court would affirm the decision of the commission and upheld it. Let me ask you one question before I'm assuming that you're finished. With regard to what Justice Hoffman had mentioned, these benefits that she's receiving and you pointed this out from the arbitrator's decision language that they have used is not guaranteed if she's subject to an annual review and if at an annual review it is found that she has somehow recovered significantly enough that she could work full time as a police officer or in any other capacity to earn income, they can be taken away, correct? Yes. And even more fearful for a client like mine in that situation, the city separated themselves from her employment as soon as she filed for the disability pension benefits. So in that analysis or that scenario you provided to me, let's say in three years she is found to be able to work full duty back as a police officer. She has no guaranteed job back with the city anymore. So now she's out in the streets with nothing. Right. And going to what Mr. Snodgrass pointed out, at one of her most recent reviews or doctor's visits, not review, but one of her most recent doctor's visits, she reported that her ankle was much, much better after the hardware was removed. Now, I don't know, I don't recall the timelines here in relation to that doctor's visit and any subsequent annual review, but if based on her own report that her ankle is much better, she goes to the next annual review and they find that she's 100% better, she could lose these benefits at that time. Has she had an annual review since that last doctor's visit? She has. And the doctors, that annual review found that she was not sufficiently healed to the point of taking that away from her. Correct. And if we're looking at the medical evidence case and weighing out the facts, this is a condition that has arthritis, she's had two surgeries, hardware in, hardware out. She's encouraged by the doctors to go work out and she wants to. She's a young person. And at the time of trial, I felt a little bit that she was being punished for that because she was going and working out and they were saying, oh, you're running, you're doing this. Well, that's what the doctors want her to do and she's a young female. And certainly, that doesn't allow her to go back to police work and she may be able to someday and she's continuing to exercise. She's not just sitting there, she's trying to be healthier and better and the doctors are encouraging that. Don't we just don't we look at the point in time suitable capacity, her earning capacity in suitable employment, right? The award is based on that. Am I correct? You're correct, your honor. And she got a lump sum man as a whole award. Am I correct on that? You're correct, your honor. Okay. So, let's say next week she has earning capacity that's been improved in some suitable job, okay? Let's forget police work. Can that award be modified? Well, I think 19-H may suggest that within a certain time frame, they certainly can file, a city can file a 19-H petition saying that her symptoms or her condition has simply gotten a lot better where she's able to go back to work. Now, certainly, there's a 30... What's that time frame? 30 months. I think it's 30 months. Right. Then it can never be revisited. Am I correct? That's correct. And I think we talked about, or at least in the prior presentation, that may be a legislation issue for us to follow. And in those factors to be considered in determining that award, they're looking at wages. Am I correct? In a suitable Her earning capacity is wages in a suitable capacity, right? Is that the language? Before I answer that question, I guess I'm not understanding it. Are you talking about the scenario of in the future or now? Right now, it doesn't matter. I mean, that award was based upon what is she able to earn in some suitable capacity. Right? Correct. Okay. I don't know why we're talking about benefits here. I'm just asking, aren't we equating benefits with wages? I mean, the argument of opposing counsel. I was somewhat... Way too simply. Well, I didn't understand the appeal. It's an Asian descent case to me. I understand they're trying to stretch the rubber band and try to get credit or reduce my client's award under the act without any supporting case law or legislative language. I'm here along for the appeal. I think taken to its logical conclusion, what they're trying to say is in determining how much a person is capable of earning in suitable employment, you have to include within capable of earning in suitable employment benefits that somebody receives in a disability pension. I think that's exactly what they're saying. Does that then stretch the rubber band for someone who buys a disability insurance policy on their own? It would be the same argument. In that particular case, the employer would be taking advantage of an insurance benefit that they didn't pay for. But the reason would be the same. It doesn't follow. It just simply doesn't follow. I agree. I was sitting with my client at the time of trial and she somewhat felt that they were saying that she's better off now than she would have been absent the injury. There was a tough case to try for her. Okay. Does that conclude your argument, Mr. Kelly? It doesn't. Thank you for your time, everyone. Mr. Snodgrass, you may reply. Thank you. Just briefly, the record contains information that if Angela Taylor was found able to return to the police force, she could return to the police force for the city of Peoria. She testified to that in the arbitration. So there's evidence in the record that she would have positioned back with the city of Peoria as a police officer first. Second of all, in regards to these reviews, Your Honor, those reviews end at age 50. So we're talking about a lady now that's what she was 43 in 2015. So we're talking about a limited time frame there in regards to that possibility of her being returned to work based on those reviews. The disability benefit that you talked about from a contract standpoint, the distinction there, I would say, Your Honor, is the city of Peoria and the municipalities throughout the state of Illinois are funding those pension obligations. And I think that's a big difference. And I think the other difference is that it arises out of the same matter that is the basis for her work comp injury in this case. Your opponent makes an observation that's entirely correct. The pension board could determine she's capable of going back to work as a police officer and stop her disability pension. The city of Peoria doesn't have to take her back. So there's testimony to the contrary, Your Honor, in the record. Well, it's not a question of they might be testimony in the record. They would take her back. My comment was they don't have to take her back. Well, there's callback rights, Your Honor, that was testified to. Might be callback rights under the contract. But if the city of Peoria is fully manned at the time that the pension board tells her you're capable of working, they don't have to take her back as an extra police officer. Well, I think the record would indicate that she would be in line to be called back as a police officer. Justice. I'm sorry, Justice. The contract would determine what callback is. Is it being on a panel like some occupation I was in at one time? You're on a panel. Only if it's opened do you get a callback. Which is back to Justice Hoffman's observation if the police force is fully manned, callback just gives you a right whenever and if there is an opening. Well, there's plenty of openings right now, Your Honor, based on the climate we're living in, fortunately, with police departments everywhere, I believe. But that's an editorial comment. That's not a comment based on the record. I would just like to note that IME doctors, once again, were all they reviewed her prior to her hardware removal. The hardware removal was really significant to this lady. And I am not trying to make the argument that we're critical of her taking advantage or getting the benefits she's afforded under the proper statute. That's not the point of this. She had every right to do what she did in regarding the line of duty disability benefits. The city didn't contest that. The city didn't contest the placebo benefits. That's what she gets. But when you look at the definition, when we talk about future earning capacity, to say that part of that future earning capacity involves these benefits that would be clearly relevant to her future earning capacity seems significant to me. And I will agree with the court. There is no case on this. That's why it gets to a de novo review, which I think was kind of acknowledged by the appellee in his response here. But it would be a de novo review on how you consider that. The other circumstance would be don't forget the flex steel case in terms of their other relevant circumstances. So just focus on future earning capacity doesn't mean you don't focus on what other relevant circumstances may be available to Angela Taylor as a police officer in this instance in awarding permanency benefits. With that, unless there's any other questions, our conclusion would be one of two things. You remand it back to the commission to factor those pension benefits in in regards to your analysis of permanency or in the alternative, which I know the courts are hesitant to do. But in the alternative, you make that determination on whether the permanency benefit should be reduced based on what we presented here. Thank you for your time today. I appreciate it. Thank you, Mr. Snodgrass. Mr. Kelly, both.